**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LEONA K. CONGROVE,**

      **Plaintiff,**

                                     **Civil Action 2:20-cv-5604**

**v.**                             **Judge Edmund A. Sargus, Jr.**

                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Leona K. Congrove, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 19), the Commissioner's Memorandum in Opposition (ECF No. 22), and the administrative record (ECF No. 12). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her applications for disability insurance benefits and for supplemental security income in January 2018, alleging that she has been disabled since September 2, 2016,[1]

---

[1] Plaintiff amended her alleged onset date of disability to August 30, 2017. (R. at 286-88.)

1

due to chronic obstructive pulmonary disease ("COPD") and asthma. (R. at 263-70, 290.)

Plaintiff's applications were denied initially in April 2018 and upon reconsideration in

September 2018. (R. at 115-86.) Plaintiff sought a *de novo* hearing before an administrative law

judge. (R. at 212-13.) Administrative Law Judge Deborah F. Sanders ("ALJ") held a hearing on

December 2, 2019, at which Plaintiff, who was represented by counsel, appeared and testified.

(R. at 76-114.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) On January 30,

2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the

Social Security Act. (R. at 7-27.) The Appeals Council denied Plaintiff's request for review

and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and her relevant hearing

testimony as follows:

> [Plaintiff] alleges disability primarily due to breathing impairments, i.e., asthma, COPD, and/or emphysema. [Plaintiff] alleges shortness of breath with exertion and at times at rest. She reported left hand swelling and pain and right sided carpal tunnel syndrome with difficulty in grasp and grip. She alleged limitation in lifting, bending, reaching, walking, and kneeling due to breathing impairment. She had fallen a few times. She alleged being able to walk only a few feet before resting. She alleged fainting spells. She alleged severe left-sided pain with swelling, preoperatively and subsequently (Exhibits 1E, 3E, 6E). [Plaintiff] testified that she stopped working due to medical issues. She testified that at her last job she could stand and take breaks as needed. She testified that she stopped working prior to this due to bad work environment/conditions. She testified that she recently reduced smoking, from one and one-half packs of cigarettes to eight cigarettes per day. She testified that that she had numbness in her hands. She testified that her left wrist would swell and go numb with pain into the elbow. She testified that she could not undergo carpal tunnel release due to lack of transportation at the time but planned to reschedule. She testified that she used braces for the hands, eight hours per day (at night). She testified that she had problems with her hands and wrist for many years, however. She testified that this worsened. She testified that she could

2

perform light household chores. She testified that she became short of breath, particularly in heat. She testified that she required breaks while cooking, for example, to catch her breath. She testified that she used a nebulizer as needed. She used multiple metered inhalers. She testified that she had difficulty sleeping due to breathing issues.

(R. at 17.)

### III.    MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's history of

asthma and COPD as follows:

As of the amended alleged onset date, [Plaintiff] was hospitalized in August 2017 due to sepsis from multifocal pneumonia. [Plaintiff] reported a history of asthma and COPD but was not taking any medications or breathing treatments (Exhibit 1F). At follow-up in September, [Plaintiff] had not filled prescriptions for Advair and Spiriva due to cost. She also continued to smoke. The source changed [Plaintiff]'s medications at that time and [Plaintiff] was referred to the emergency department for further evaluation and dehydration. [Plaintiff] was hesitant to go to the emergency department, however, and at a subsequent follow-up, [Plaintiff] indicated that she did not go to the emergency department as recommended. However, she stated that she was doing better overall. The shortness of breath was slowly improving. She complained of coughing; however, she also reported smoking one pack of cigarettes per day. She reported using an inhaler six times per day. On exam, she had wheezing throughout but no rhonchi or rales (Exhibit 5F). [Plaintiff] subsequently sought treatment at the emergency department in December 2017 complaining of shortness of breath and chest pain. On exam, she had 97% oxygen saturation on room air. She had no respiratory distress but decreased breath sounds bilaterally. She had no wheezing or rales, however. Imaging of the chest and lab findings showed multifocal pneumonia. Notably, [Plaintiff] continued to smoke one pack of cigarettes per day. [Plaintiff] responded well to treatment (Exhibit 1F). In February 2018, a spirometry evaluation noted mild obstructive pulmonary disease (Exhibit 5F).

3

In February 2018, [Plaintiff] underwent a pulmonary consultation for COPD and asthma. [Plaintiff] reported that she improved following the episode of pneumonia. She reported that she was not having pneumonia symptoms at that time. She reported shortness of breath, wheezing, and cough. She had difficulty breathing when lying on her back. She was interested in quitting smoking (see Exhibit 5F) but continued to smoke at that time. The source noted that [Plaintiff]'s prior CT scans showed evidence consistent with pulmonary emphysema (Exhibit 4F). A pulmonary function test in March 2018, consistent with moderate obstructive lung disease (Exhibit 8F). At a pulmonary follow-up in April, [Plaintiff] continued to smoke one-half pack of cigarettes per day. A repeated CT scan showed evidence of bronchiectasis as well as multiple cystic areas of the lungs. The pulmonary function study showed airflow obstruction, well preserved flow rates at 70%, air-trapping, and diffusion capacity at 55% of predicted. The source noted that these findings were most consistent with emphysema. On exam, [Plaintiff] had unlabored respiratory effort. She had no wheezing, rales, crackles, with normal breath sounds. The source recommended smoking cessation (Exhibit 9F).

(R. at 18.)

[Plaintiff] received routine management through a primary care provider. In November 2018, [Plaintiff] established primary care through Dr. Dennison. In pertinent part, [Plaintiff] reported shortness of breath, cough, wheezing, bilateral hand pain, and fatigue. [Plaintiff] smoked cigarettes: one and one-half pack per day. On exam, [Plaintiff] had scattered wheezes but was breathing easily. No specific findings were otherwise noted. Dr. Dennison recommended Suboxone treatment and otherwise refilled [Plaintiff]'s inhalers. In December, [Plaintiff] reported that she was "doing OK". Her exam was largely unchanged. Likewise, in January 2019, [Plaintiff] reported that breathing had been "OK".  She had no wheezing, rales, or rhonchi on examination. She did not appear to be in any distress. Subsequent notes document no significant changes in [Plaintiff]'s physical exam or impairments. In May, she had some wheezing in the left lung but the right lung was clear. Her exam was otherwise unchanged. In August, treatment notes document some recent difficulty breathing but only some adjustments to [Plaintiff]'s inhalers and nebulizer was recommended. Her exam showed some decreased excursion but clear lungs and breathing easily. [Plaintiff] was repeatedly encouraged to quit smoking, including nicotine replacement and prescription medication; however, she was considered a heavy smoker. In September, [Plaintiff]'s exam was largely normal, with clear lungs and good breath sounds. She was breathing easily. Her exam was largely unchanged at a follow-up in October (Exhibit 15F).

[Plaintiff] underwent a physical consultative examination performed by Dr. Whitehead in September 2018. During the exam, [Plaintiff] reported smoke half of one pack per day. She reported worsening asthma symptoms over the last few years. She reported productive cough, shortness of breath with exertion and at times, no apparent triggering. She reported frequent wheezing despite use of rescue and other metered dose inhalers. She alleged using albuterol inhaler five to six times per day and nebulizer several times per day. She reported symptoms were worse with hot, humid days. She reported performing housework in stages to take rest breaks. She also reported left wrist surgery but was not sure what procedure was done. She stated that she was most comfortable sitting. She could lift 15 pounds safely, sit for hours, stand 15 minutes, and walk about half of one block. She could perform lighter cooking, cleaning, and minimal shopping. She was able to perform activities of daily living. On exam, [Plaintiff] appeared well-developed and in no acute distress. She communicated without difficulty. She frequently displayed "a typical 'smoker's cough'". Exam of the lungs showed slightly decreased breath sounds with scattered wheezing throughout. On the left wrist, she had decreased range of motion with diffuse tenderness and mild swelling. She had slightly decreased grip strength due to pain. The remainder of the examination was entirely normal. A pulmonary function test at that time was noted to be "likely valid" and showed moderate obstruction not improved postbronchodilator. Dr. Whitehead opined that [Plaintiff] could only perform jobs that allowed her to sit the majority of the day and could not perform repetitive pushing, pulling, or gripping with the left upper extremity. She would need to work indoors (Exhibit 12F).

(R. at 19-20.)

## IV. ADMINISTRATIVE DECISION

On January 30, 2020, the ALJ issued her decision. (R. at 7-27.) The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2017.  (R. at 12.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff

has not engaged in substantially gainful activity since August 30, 2017, the alleged onset date.

(*Id.*)  The ALJ found that Plaintiff had the severe impairments of pulmonary emphysema/chronic

obstructive pulmonary disease (COPD); left wrist scapholunate advanced collapse (SLAC)

with arthritic changes status-post proximal row carpectomy; and right carpal tunnel syndrome.

(*Id.*)  She further found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (R. at 15.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, [Plaintiff] can stand and/or walk six hours and sit six hours. [Plaintiff] can frequently push and pull with the upper extremities and frequently

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is [Plaintiff] engaged in substantial gainful activity?
2. Does [Plaintiff] suffer from one or more severe impairments?
3. Do [Plaintiff]'s severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering [Plaintiff]'s residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering [Plaintiff]'s age, education, past work experience, and residual functional capacity, can [Plaintiff] perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

6

operate hand controls bilaterally. She can frequently climb ramps and stairs but
never climb ladders, ropes, or scaffolds. She can frequently stoop, crouch, and
crawl. She can frequently finger[] and feel[] bilaterally. She can frequently reach
with the left upper extremity. She would need to work indoors and avoid
concentrated exposure to extreme cold, extreme heat, irritants, such as fumes,
odors, dusts, gases, poorly ventilated areas, and never work at unprotected heights
or around dangerous machinery.

(R. at 16.)

Relying on the VE's testimony, the ALJ found that Plaintiff's limitations precluded her

ability to perform her past relevant work as a cashier and motel cleaner/housekeeping.  (R. at

21.)  The ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in

the national economy.  (R. at 22.)   She therefore concluded that Plaintiff was not disabled under

the Social Security Act at any time since August 30, 2017, the alleged onset date.  (R. at 23.)

## V.   STANDARD OF REVIEW

 When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

7

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff sets forth the following statement of error: "The ALJ erred in analyzing Listing 3.02. Her analysis does not rely on substantial evidence because it mischaracterizes the results of the August, 2018 pulmonary function test."[3]  (ECF No. 19 at 11-13.)  The Undersigned disagrees and finds that the ALJ's decision is supported by substantial evidence.

The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work

---

[3] It appears from Plaintiff's argument that the results at issue actually relate to a pulmonary function test taken on November 28, 2018.  (ECF No. 19 at 11 citing R. at 763.)

experience." 20 C.F.R. § 416.925(a). A claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). That said, "[a] claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). All criteria must also be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. § 416.925(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."). A claimant bears the burden of proving that she meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5).

The ALJ discussed the medical evidence relating to Listing 3.02 as follows:

The medical evidence of record establishes that [Plaintiff] has obstructive disease, but the evidence does not meet or equal the severity of listing-level chronic obstructive pulmonary disease as provided in Listing 3.02. Specifically, there are no pulmonary function tests in the record to meet the criteria of listing 3.02. She has not required three hospitalizations within a 12-month period due to exacerbations or complications. [Plaintiff]'s pulmonary function tests document

9

moderate obstruction with FVC of 3.13 and FEV1 of 2.07 postbronchodilator with decreased diffusing capacity and airtrapping (Exhibit 8F; see also Exhibit 2F). These findings do not rise to listing-level severity. The November 2018 function test, cited by [Plaintiff]'s representative, notes FVC of 1.52 and FEV1 of 1.17; however, this does not appear to be valid testing, as the note indicates, while obstruction is suggested, the degree of obstruction "may be underestimated…poor initial effort suggested" (Exhibit 14F). This is particularly true given that prior testing in September 2018 did not show this degree of obstruction or restriction (Exhibit 12F). Thus, the testing does not meet the criteria of Listing 3.02.

(R. at 16.)

Listing 3.02 provides that an individual is considered disabled as a result of "chronic respiratory disorders due to any cause except CF with A, B, C, or D." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02. As applicable here, the subsection (A) or (B) criteria required Plaintiff to show either she had an FEV1 or FVC less than or equal to specified values based on her "age, gender, and height without shoes." *Id.* at § 3.02(A)-(B).  According to Plaintiff, the pre- and post-bronchodilator FVC values of 1.47 and 1.52 and the FEV1 values of 1.19 and 1.12 reflected in the report dated November 28, 2018 (R. at 763) satisfy the Listing requirements for a female of her age (over 20 years old) and height (66 inches).  Plaintiff contends that, in finding these test results to be invalid, the ALJ improperly made "a medical determination, not a legal determination."  (ECF No. 19 at 13.)  Plaintiff's argument is not well-taken.

The explanatory notes preceding Listing 3.02 explain the "requirements for an acceptable test and report" to demonstrate a valid FEV1 and FEV score for purposes of the Listing.  They provide, in relevant part, as follows:

Spirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume

10

of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC. We use your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A, and your highest FVC value to evaluate your respiratory disorder under 3.02B, regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers.

20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 3.00(E)(1).

The explanatory notes also set forth requirements for the spirometry test, including that "forced expiratory maneuvers must be satisfactory" *id*. at § 3.00(E)(2)(c) and that the spirometry report must include "[a]ny factors, if applicable, that can affect the interpretation of the test results (for example, your cooperation or effort in doing the test)." *Id*. at § 3.00(E)(3)(b). These introductory materials confirm that the ALJ is qualified to assess the medical testing as part of the duty to assess and weigh all of the medical evidence in the record. Plaintiff does not cite any authority to the contrary. Moreover, Plaintiff's bare argument that the ALJ erred in finding that the test results were not "valid" as opposed to not "acceptable" --which appears to be nothing but an objection as to word choice-- simply is not persuasive.

Similarly, the Undersigned finds no merit to Plaintiff's contention that the ALJ erred in misreading the report to the extent it states that "obstruction may be underestimated." According to Plaintiff, the obstruction may have been more significant than revealed by the testing. This assertion is nothing more than speculation. Moreover, even assuming any potential underestimation, Plaintiff has failed to point to any other evidence in the record of a spirometry test satisfying the Listing's requirement. *See, e.g., Thacker v. Soc. Sec. Admin.*, 93 Fed. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the

11

applicable impairment or present medical evidence which describes who the impairment has

such equivalency.")  Additionally, as further support for her conclusion that Plaintiff had not met

the Listings, the ALJ noted, and Plaintiff concedes, that her pulmonary function test from

September 2018 (R. at 755) indicated less obstruction/restriction than the November 2018 report.

Likewise, the results of a March 2018 report also fell outside the Listing's requirements.   (R. at

593.)  Plaintiff suggests that her breathing impairment may have been more significant in

November 2018 because the other pulmonary tests demonstrate worsening over time.  Again,

however, this is nothing but Plaintiff's pure conjecture.

     In sum, Plaintiff has failed to satisfy her burden to show that her breathing impairment

met the criteria for Listing 3.02.  Contrary to Plaintiff's assertions, the record does not contain

evidence from pulmonary function tests that satisfy the Listings requirements. The test upon

which Plaintiff relies in an effort to satisfy her burden (November 28, 2018) simply is

insufficient.

## VII.   CONCLUSION

     From a review of the record as a whole, the Undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is

therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that

the Commissioner's decision be **AFFIRMED.**

## VIII.   PROCEDURE ON OBJECTIONS

     If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:      November 5, 2021                              /s/ *Elizabeth A. Preston Deavers*
                                                                    Elizabeth A. Preston Deavers
                                                                    United States Magistrate Judge